THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

----------------------------------------

THOMAS E. PEREZ, SECRETARY OF LABOR,  :
UNITED STATES DEPARTMENT OF LABOR,
                                      :

          Plaintiff,                  :   Civil Action No.

     v.                               :   1:17-cv-3  (Keeley)

LONE STAR WESTERN BEEF, INC.,         :

     and                              :

JOHN M. BACHMAN, an individual,       :   DEMAND FOR JURY

                                      :

          Defendants.
----------------------------------------

ELECTRONICALLY FILED
Jan 05 2017
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT

Plaintiff, Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Secretary"), brings this action to enjoin Defendant Lone Star Western Beef, Inc. and Defendant John M. Bachman (referred to herein jointly as "Defendants") from violating the provisions of Section 11(c) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678 ("Act"), for a judgment against Defendants for back wage compensation, and for all other appropriate relief for former employee Michele Butler-Savage.

### Parties

1.   The Secretary is authorized to bring this action against Defendants pursuant to Section 11(c)(2) of the Act. 29 U.S.C. § 660(c)(2).

2. At all relevant times, Defendant Lone Star Western Beef, Inc. was a West Virginia corporation with a place of business located at 46 Meadowdale Road, Fairmont, West Virginia 26554.

3. At all relevant times, Defendant John M. Bachman was the President, owner, and operator of Lone Star Western Beef, Inc. and resided at least part-time in West Virginia.

## Jurisdiction and Venue

4. Venue with respect to this action lies in the Northern District of West Virginia because Defendant Lone Star Western Beef, Inc. operated a production facility in Fairmont, WV and all events giving rise to this action occurred in Marion County, West Virginia. 28 U.S.C. § 1391.

5. At all relevant times, Lone Star Western Beef, Inc. was a "person" within the meaning of Sections 3(4) and 11(c)(1) of the Act, 29 U.S.C. §§ 652(4) and 660(c)(1), because it was a corporation.

6. At all relevant times, Lone Star Western Beef, Inc. was an "employer" within the meaning of Section 3(5) of the Act, 29 U.S.C. § 652(5), because it was a person engaged in a business affecting trade, traffic, commerce, transportation, or communication between the State of West Virginia and states outside of West Virginia who had employees.

7. At all relevant times, John M. Bachman was a "person" within the meaning of Sections 3(4) and 11(c)(1) of the Act, 29 U.S.C. §§ 652(4) and 660(c)(1), because he is an individual.

8. At all relevant times prior to being terminated, Michele Butler-Savage was an "employee" within the meaning of Sections 3(6) and 11(c)(1) of the Act, 29 U.S.C. §§ 652(6) and 660(c)(1), because she was employed by Lone Star Western Beef, Inc.

## General Allegations

9. At all times relevant hereto, Defendants operated a facility in Fairmont, West Virginia ("facility" or "plant"). The facility manufactured beef jerky.

10. At all times relevant hereto, there were approximately twelve employees working at the facility.

11. On or about March 18, 2014, Defendants hired Michele Butler-Savage ("Butler-Savage") as a food processor at the facility. Butler-Savage's duties included stringing, sorting, and packaging beef jerky.

12. On July 7, 2014, Butler-Savage started her shift at approximately 7:00 a.m. At approximately 7:20 a.m., Butler-Savage heard coworker Chris Crane ("Crane") exclaim that he had cut his finger.

13. Butler-Savage saw blood running down Crane's hand and arm, and believed that he sustained a serious injury. Butler-Savage went to assist Crane while another worker went to get John M. Bachman ("Bachman"). Butler-Savage put Crane's hand under cold water and tried to slow the bleeding with paper towels.

14. Butler-Savage told Crane that she needed to call 911. Butler-Savage used her personal cell phone to dial 911. At some point before the call went through, Bachman arrived. Bachman told Butler-Savage not to call 911 and instructed her to hang up the phone.

15. Butler-Savage told Bachman that Crane needed an ambulance. Bachman responded that he would decide whether to call an ambulance and instructed Butler-Savage to get back to work.

16. At the time he cut his finger, Crane was operating a band saw to cut beef as part of the manufacturing process. The blade of the band saw had severed a piece of Crane's right thumb.

17. After instructing Butler-Savage to hang up the phone, Bachman collected the severed piece of Crane's thumb and had supervisor Kay Davis ("Davis") drive Crane to Whitehall Medical, an urgent care clinic.

18. Whitehall Medical transferred Crane to a hospital emergency room in an ambulance. The emergency room was ultimately unable to reattach the severed portion of Crane's thumb.

19. Butler-Savage observed that Bachman did little to clean or sanitize the areas where Crane's blood had spurted all over the floor and wall in his work area and on the floor and sink in the processing area. Bachman discarded only the piece of meat Crane was cutting when he was injured, and did not discard other meat present in the area where Crane bled. The areas where Crane bled were not sanitized until production was finished for the day.

20. At approximately 3:00 p.m. on July 7, 2014, Butler-Savage discussed her concerns about the accident, the cleanup, and the lack of appropriate personal protective equipment with a United States Department of Agriculture inspector. Butler-Savage also told the inspector that she had tried to call 911.

21. On July 9, 2014, Bachman fired Butler-Savage. Bachman initially told Butler-Savage that production was slow, but further complained that he had lawsuits pending against him, that there were too many government rules to follow, and that the government always had its hand in his business.

22. Bachman alone made the decision to terminate Butler-Savage.

23. Bachman terminated Butler-Savage in retaliation for engaging in activities that are protected under the Act.

24. On July 10, 2014, Butler-Savage filed a timely complaint with the Occupational Safety and Health Administration alleging that Defendants discriminated against Butler-Savage in violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1), by terminating her for engaging in protected activity.

25. On July 18, 2014, Defendants received notice that Butler-Savage had filed a Section 11(c) complaint.

26. The Secretary thereafter investigated said complaint in accordance with Section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2), and determined that Defendants had violated Section 11(c) of the Act by terminating Butler-Savage.

### Violations of the Act

27. The Secretary incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. The activities described in paragraphs 13-15 and 19-20 represent the exercise of rights afforded by the Act, and constitute activities that are protected by the Act.

29. Defendants terminated Butler-Savage because she exercised rights and engaged in activities protected by the Act, in violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

30. To date, Defendants have failed to compensate Butler-Savage for wages lost as a result of her improper termination, in continuing violation of Section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1).

### Relief Sought

WHEREFORE, cause having been shown, the Secretary requests a trial by jury, and further prays for judgment:

a. Permanently enjoining and restraining Defendants, their officers, agents, servants, employees and those persons in active concert or participation with them, from violating the provisions of Section 11(c) of the Act;

b. Ordering Defendants to pay damages to Butler-Savage for lost wages that resulted from her termination, and prejudgment and post-judgment interest thereon, as authorized by Section 11(c) of the Act;

c. Ordering Defendants to post in a conspicuous place in the facility for a period of not less than sixty days a copy of the decree entered in this case and a notice that Defendants will not discriminate against any employee for engaging in activities protected by Section 11(c) of the Act;

d. Ordering Defendants to compensate the Secretary for all costs incurred in this litigation; and

e. Ordering all other appropriate relief including punitive damages, emotional distress, pain and suffering, other expenses incurred by Butler-Savage as a result of being terminated by Defendants.

Respectfully submitted,

M. Patricia Smith
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

*Jordana Greenwald* (signature)
Jordana L. Greenwald
Attorney
U.S. Department of Labor
170 S. Independence Mall West
The Curtis Center - Suite 630 East
Philadelphia, PA 19106
(215) 861-5129
greenwald.jordana@dol.gov

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff

Betsy Steinfeld Jividen,
Acting United States Attorney

/s/ Helen Campbell Altmeyer
Assistant United States Attorney
WV Bar # 117
U.S. Attorney's Office
P.O. Box 591
Wheeling, WV 26003
PHONE: 304-234-0100
EMAIL: Helen.Altmeyer@usdoj.gov

UNITED STATES ATTORNEY FOR THE
NORTHERN DISTRICT OF WEST
VIRGINIA
Attorneys for Plaintiff

7